# In the United States Court of Federal Claims

No. 14-780C
(Filed under seal October 23, 2014)
(Reissued October 28, 2014)†

```
* * * * * * * * * * * * * * * *
                               *
INFORELIANCE CORP.,            *      Post-award bid protest; United States
          Plaintiff,           *      Marine Corps; supplementation of
                               *      administrative record; extra-record
     v.                        *      evidence of bad-faith or bias;
                               *      declaration containing specific
THE UNITED STATES,             *      allegations of bias; conduct hard to
          Defendant,           *      explain absent bias; hard facts
                               *      sufficient to support discovery.
     and                       *
                               *
SCIENCE APPLICATIONS           *
INTERNATIONAL CORP.,           *
          Defendant-intervenor. *
                               *
* * * * * * * * * * * * * * * *
```

*William A. Shook*, Seattle, Washington, for plaintiff.

*Jennifer E. LaGrange*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Joyce R. Branda*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Franklin E. White, Jr.*, Assistant Director, all of Washington, D.C., for defendant. *Lisa L. Baker*, Counsel, Marine Corps Systems Command, United States Marine Corps, of counsel.

*William L. Walsh, Jr.*, Venable, LLP, with whom were *James Y. Boland* and *Anna E. Pulliam*, Venable, LLP, all of Tysons Corner, Virginia, for intervenor.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

The matter before the Court is plaintiff's "Motion for Limited Discovery and Supplementation of the Administrative Record" (Pl.'s Mot.). Specifically, plaintiff

---

† This opinion was initially filed under seal to allow the parties to propose redactions. The proposed redactions have been adopted, with the deleted text replaced in the following manner: "[XXX]." The opinion is released for publication with some minor, non-substantive corrections.

seeks three depositions and the production of documents related to its allegation that the procurement decision challenged in this post-award bid protest action was affected by an evaluator's bias. The government opposes the motion, arguing that the evaluator was not the ultimate decision maker and that evidence in the administrative record is inconsistent with the allegations of bias. For the reasons given below, plaintiff's motion is **GRANTED**.

## I. BACKGROUND

Plaintiff, InfoReliance Corp., brought an action in this court challenging the manner in which the United States Marine Corps (USMC) evaluated offers submitted in response to Solicitation No. M67854-14-R-4802. Compl. at 1. The USMC seeks to consolidate fifteen separate information technology systems --- currently operated by five contractors under thirteen different contracts --- into one system under a single contractor. Admin. R. (AR), Tab 4 at 72–73. Plaintiff is the incumbent for five of these contracts, and two of plaintiff's proposed subcontractors are incumbents for two others. *Id.* at 73–74. InfoReliance is protesting the award to intervenor Science Applications International Corp. (SAIC). *See* Compl. at 1.

The solicitation indicated that the USMC intended to award the contract without discussions. AR, Tab 19a at 1011. It further stated that any offeror receiving an adjectival rating below "acceptable" in any rated evaluation factor[1] would be ineligible for award if, as anticipated, discussions were not conducted. *Id.* After the initial review of the six proposals submitted, the USMC determined that all five offerors other than InfoReliance were ineligible due to low ratings. AR, Tab 46 at 4540. The USMC also decided not to make an award to plaintiff, even though it was the only offeror not disqualified for low ratings. *Id.* at 4540–41.[2] Rather, the USMC determined that there was a risk that plaintiff did not have "a clear understanding of an important requirement" --- because of unrealistically low pricing for one of the sample tasks upon which the evaluation was based --- and

---

[1] The solicitation identified four evaluation factors that would receive adjectival ratings in this best value procurement --- in decreasing order of importance: Technical Approach, Management Approach, Past Performance, and Small Business Participation. AR, Tab 19a at 1011–12.

[2] InfoReliance received the following adjectival ratings in the initial evaluation: Technical Approach --- Good; Management Approach --- Outstanding; Past Performance --- Very Relevant/Substantial Confidence; and Small Business Participation --- Acceptable. AR, Tab 46 at 4538. In comparison, SAIC received the following ratings: Technical Approach --- Outstanding; Management Approach --- Good; Past Performance --- Very Relevant/Substantial Confidence; and Small Business Participation --- Marginal. *Id.*

concluded that an award to plaintiff "was not in the Government's best interest." *Id.*

In keeping with the terms of the solicitation, the government established a competitive range of the highest rated offerors, comprising InfoReliance and SAIC, in order to conduct discussions. AR, Tab 46 at 4541. InfoReliance and SAIC were notified of their inclusion in the competitive range, informed of the weaknesses identified in their respective bids, and given the opportunity to respond by submitting proposal revisions. *See* AR, Tab 49 at 4570–71, Tab 50 at 4644–45. InfoReliance was told that the pricing and number of hours allotted for certain tasks was deemed unrealistic. AR, Tab 49 at 4570, Tab 49b at 4574–78. Intervenor was informed that it had received a "Marginal" rating for Small Business Participation and that its price was high, relative to other offerors, and therefore potentially non-competitive. AR, Tab 50 at 4644, Tab 50a at 4647, Tab 50b at 4650. After InfoReliance's and SAIC's revisions were submitted and evaluated, the USMC awarded the contract to SAIC based on its higher technical rating and lower price. AR, Tab 57 at 5957–59.

In this protest, plaintiff alleges that the USMC was not evenhanded in its evaluations, Compl. ¶ 73, and gave disproportionate weight to a minor portion of its proposal which was not identified among the stated evaluation factors, *id.* ¶ 82. Plaintiff further asserts that the decision to conduct discussions and the ultimate award to SAIC resulted from the bias of the Management Evaluation Review Panel (MERP) chairperson, Sheri Stefaniga, who was also the Contracting Officer Representative (COR) for one of the SAIC contracts which was to be consolidated through the solicitation. *Id.* ¶¶ 52–53; *see* Def.'s Opp'n to Pl.'s Mot. for Ltd. Disc. & Suppl'n of Admin. R. (Def.'s Opp'n) at 11.[3]  Plaintiff's contentions are informed by statements allegedly made to an InfoReliance officer by two procurement officials who were with the USMC at the time of the procurement. Pl.'s Mot. at 1.[4]  These officials' impressions are detailed in a declaration filed in support of plaintiff's motion for a preliminary injunction, which the Court denied. *See* Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Prelim. Inj., Attach. 1 (Perry Decl.); Order of Sept. 15, 2014, ECF No. 36 (denying motion for preliminary injunction).

## II.  DISCUSSION

Although the agency-generated administrative record in informal actions such as procurement decisions has long been recognized as a legal fiction, *see Joint*

---

[3]  Plaintiff also alleges, *inter alia*, that USMC's price realism analysis of its proposal was unnecessary and unreasonable.  Compl. ¶¶ 59–61.

[4]  One of the officials, Michael Wright, has apparently since transferred to a position with the Army.  Tr. (Sept. 15, 2014) at 18.

*Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 165 (2011); *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 343 & n.9 (2004), a court's review of the agency decision in a bid protest is usually restricted to the materials in the administrative record, *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009); *Tech Sys., Inc. v. United States*, 97 Fed. Cl. 262, 265 (2011).[5] As the Federal Circuit indicated in *Axiom*, the administrative record is supplemented only in rare cases in which this is "necessary in order not 'to frustrate effective judicial review.'" *Axiom*, 564 F.3d at 1381 (quoting *Camp v. Pitts*, 411 U.S. 138, 142–43 (1973)). Significantly, the administrative record may be insufficient and supplementation warranted when it is missing "relevant information that by its very nature would not be found in an agency record --- such as evidence of bad faith, information relied upon but omitted from the paper record, or the content of conversations." *Orion*, 60 Fed. Cl. at 343–44 (footnotes omitted).[6]

An allegation of bad faith or bias in particular calls for extra-record evidence to support requests for supplementation or discovery. *See Beta Analytics Int'l, Inc. v. United States*, 61 Fed. Cl. 223, 226 (2004) (recognizing that otherwise discovery will be insensibly limited "to cases involving officials who are both sinister *and* stupid"). But because of the presumptions of regularity and of good faith conduct, *see Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 769 (2005), "to put facts relating to bad faith in play a plaintiff must first make a threshold showing of either a motivation for the

---

[5] The Administrative Dispute Resolution Act of 1996 (ADRA) requires bid protests to be reviewed in this court using the standards employed in Administrative Procedure Act (APA) review. *See* 28 U.S.C. § 1491(b)(4) (2012) ("[T]he courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). Courtesy of an apparent misreading of the legislative history, *see Gulf Grp. Inc. v. United States*, 61 Fed. Cl. 338, 350 n.25 (2004), the Supreme Court had determined, before the 1996 enactment of the ADRA, that informal agency decisions are to be reviewed under the APA's arbitrary and capricious standard, rather than *de novo, see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971).

[6] Adding relevant materials to the record in the situations described in *Orion* "might be viewed not as supplementation at all, but merely requiring that the administrative record be complete." *Murakami v. United States*, 46 Fed. Cl. 731, 735 n.4 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005); *see also Tauri Grp. LLC v. United States*, 99 Fed. Cl. 475, 480–81 (2011) ("[T]he relevant doctrine entails 'limiting review *to the record actually before the agency*,' not to the record the agency chooses to present. Thus, when the 'focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court,' this 'existence' depends on what the agency did in reaching its decision, not what it chooses to assemble after a protest is lodged." (citations omitted) (quoting *Axiom*, 564 F.3d at 1380, and *Pitts*, 411 U.S. at 142)).

Government employee in question to have acted in bad faith or conduct that is hard to explain absent bad faith," *Beta Analytics*, 61 Fed. Cl. at 226; *see also DataMill, Inc. v. United States*, 91 Fed. Cl. 722, 730–31 (2010). When, as here, discovery is sought, a second hurdle must be surmounted, and "the plaintiff must persuade the Court that discovery could lead to evidence which would provide the level of proof required to overcome the presumption of regularity and good faith." *Beta Analytics*, 61 Fed. Cl. at 226 (citing *Orion*, 60 Fed. Cl. at 343 n.11, 344).

A plaintiff seeking supplementation or discovery need not, however, meet the same burden of proof that it ultimately must carry on the merits, and "[t]he test for supplementation is whether there are sufficient well-grounded allegations of bias to support" supplementation. *Pitney Bowes Gov't Solutions, Inc. v. United States*, 93 Fed. Cl. 327, 332 (2010) (citing *L–3 Commc'ns Integrated Sys., L.P. v. United States*, 91 Fed. Cl. 347, 354–55 (2010)). These allegations must rest on "hard facts," not merely innuendo or suspicion. *See Int'l Res. Recovery, Inc. v. United States*, 61 Fed. Cl. 38, 43 (2004); *Beta Analytics*, 61 Fed. Cl. at 226. The Court concludes that this is one of those rare cases in which "the proffered extra-record material . . . indicate[s] some personal animus or bias on the part of agency officials," *Madison Servs., Inc. v. United States*, 92 Fed. Cl. 120, 130 (2010), based on the hard facts contained in the declaration submitted with plaintiff's motion for preliminary injunction.

Much of the conduct attributed to Ms. Stefaniga by the Perry Declaration is "hard to explain absent bad faith." *Beta Analytics*, 61 Fed. Cl. at 226. The declaration relates the statements of two witnesses that Ms. Stefaniga "expressed extreme frustration because a written justification for an award of contract was being rejected by legal counsel at the USMC," Perry Decl. ¶ 4, and that she "had gone out of her way during the review process to let it be known to the acquisition team that SAIC was the only contractor that could properly support" the consolidated information technology systems, *id.* ¶ 6. The declaration further reports that one of the witnesses --- Michael Wright, a member of the evaluation panel chaired by Ms. Stefaniga --- alleged that she "'went out of her way' to address a Level of Effort weakness regarding the [sample task order] pricing offered by InfoReliance so as to prevent award to InfoReliance without discussions," *id.* ¶ 7, and that she "spent a significant amount of time building a consensus to highlight doubts about the InfoReliance proposal so that award could be made to SAIC," *id.* ¶ 8.

It would not be remarkable for an evaluator, once convinced that a particular proposal possessed superior merit, to attempt to persuade others to agree with her opinion. But the allegations regarding Ms. Stefaniga suggest behavior that seems inconsistent with what would be expected of an objective evaluator. If, as plaintiff contends, Ms. Stefaniga drafted a document supporting a contract award to SAIC

that was rejected upon legal review,[7] the resulting "extreme frustration" at that result implies a greater personal investment in the outcome than is typical in a federal procurement.  The government argues that the administrative record contradicts any claims of bias on Ms. Stefaniga's part, as the MERP she chaired rated the initial InfoReliance proposal higher than SAIC's, and assigned the latter the marginal rating that precluded award before discussions.  *See* Def.'s Opp'n at 18.  But that makes her attempts to secure an award to SAIC at that juncture, if true, even harder to explain absent bias.  The USMC procurement official who discussed this matter with Ms. Stefaniga --- Danny Franco, the COR for two of the InfoReliance contracts[8] --- allegedly reached the conclusion that the process was manipulated to result in the award to SAIC.  *See* Perry Decl. ¶ 13.

Even more curious is the conduct allegedly witnessed by Ms. Stefaniga's MERP team member, Mr. Wright.  The MERP was charged with evaluating the management, past performance, and small business participation portion of the proposals.  *See* AR, Tab 44 at 4407–85 (initial MERP report); *see also* AR, Tab 27 at 3904–05.  The level of effort plaintiff proposed for the sample transition task order was contained in the volume of its proposal reviewed by the Technical Evaluation Review Panel (TERP), *see* AR, Tab 25a at 2987–89, and was discussed in the TERP report, *see* AR, Tab 43 at 4339, 4345.  Those hours of work, and the associated costs, were also contained in the pricing volume of the proposal, *see* AR, Tab 25d at 3274–76, and were evaluated for realism in the Price Evaluation Report, *see* AR, Tab 45 at 4494–99.  Neither the proposed level of effort nor the associated price for the transition sample task order were mentioned in the proposal volume evaluated by the MERP, *see* AR, Tab 25 at 3139–52, and were not discussed in the MERP's evaluation of plaintiff's proposal, *see* AR, Tab 44 at 4422–32.  Yet, according to Mr. Wright, the MERP chairperson "went out of her way" to focus on these matters, to stop an award to plaintiff without discussions.  Perry Decl. ¶ 7.  While there might be an innocuous explanation for the MERP chairperson's seeming preoccupation with a matter outside her charge, bias could more easily explain such zeal.

The statements attributed to Mr. Wright further suggest that Ms. Stefaniga had assumed a role more akin to an advocate on SAIC's behalf than an objective evaluator.  *See id*. ¶¶ 6, 8.  He alleged that he was not alone in believing that bias had infected the process.  *Id*. ¶ 11.  For his troubles, he purportedly "was brought before the contracting officer and other members of the acquisition team for what he

---

[7]  The Court notes that the Source Selection Plan for the solicitation assigned to the MERP chairperson the task of "perform[ing] a Best Value Recommendation to be presented to the [Source Selection Authority]."  AR, Tab 6 at 118.

[8]  Neither Mr. Franco nor the other three CORs for the five contracts held by plaintiff were selected to participate in the source selection under challenge in this case.  *See* Def.'s Opp'n at 12.

described as 'an intervention' in order for him to change his position about the conduct of the acquisition and award decision." *Id.* From this vantage point, it is impossible to tell whether his characterization of the MERP chairperson's conduct is fair or is instead tainted by the same sort of frustration Mr. Franco attributed to Ms. Stefaniga, but one supposes evaluation team members do not lightly level claims of bias. In any event, these allegations of bias are specific enough, and difficult enough to explain in the absence of bias, to support the discovery sought by plaintiff.[9]

The government argues that since Ms. Stefaniga was not the Source Selection Authority and did not make the award decision, the plaintiff must (but has failed to) "elaborate on how [she] exerted improper influence on the decision-maker." Def.'s Opp'n at 9 (citing *DataMill*, 91 Fed. Cl. at 731 and *Terry v. United States*, 96 Fed. Cl. 156, 164 (2010)). But the reason such influence was required to be demonstrated in the cases cited by the government is that the individuals whose bad faith was alleged had no apparent role in the procurement decisions under challenge. *See DataMill*, 91 Fed. Cl. at 730–31; *Terry*, 96 Fed. Cl. at 164–65. By contrast, here Ms. Stefaniga chaired one of the evaluation panels, holding a position the very point of which was to influence the procurement decision. Whether, if she is proven to have been biased, she wielded sufficient influence to taint the ultimate award is a question of fact "best left to the merits determination." *Tech Sys.*, 97 Fed. Cl. at 266.

The Court is persuaded that the discovery requested by plaintiff --- as modified in its reply, *see* Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Disc. (Pl.'s Reply), Ex. A --- "could lead to evidence which would provide the level of proof required to overcome the presumption of regularity and good faith." *Beta Analytics*, 61 Fed. Cl. at 226. InfoReliance seeks to depose Messrs. Franco and Wright and Ms. Stefaniga, *see* Pl.'s Mot. at 2. It also requests the production of certain documents relating to Ms. Stefaniga's actions concerning plaintiff or intervenor, and documents relating to Mr. Wright's criticisms of the procurement process, *see* Pl.'s Reply, Ex. A.[10] Plaintiff has provided the "hard facts" supporting discovery through

---

[9] The Court notes that one allegation of "'very suspect' conduct" reportedly made by Mr. Wright, Perry Decl. ¶ 10 --- the change in SAIC's price from $[XXX] above plaintiff's initial proposal down to $[XXX] below it, *see* AR, Tab 45 at 4488; AR, Tab 54c at 5773 --- appears to rest on little more than suspicion and innuendo. But the Court finds that the other, plausible allegations of bias are sufficient to support the limited discovery sought in this area, which would at the margin add little to the government's compliance burden.

[10] The government argues that if a draft award document prepared by Ms. Stefaniga exists, it would be "protected by the deliberative process privilege, and exempt from inclusion in the administrative record." Def.'s Opp'n at 22. If relevant to plaintiff's claim of bad faith, however, such a document cannot be sheltered under

the declaration of Mr. Perry.  *See Beta Analytics*, 61 Fed. Cl. at 226.[11]  Under these circumstances, in which plaintiff is alleging bias on the part of a member of the Source Selection Evaluation Board, and has provided a declaration describing suspect conduct that supports the plaintiff's claim, effective judicial review would be frustrated if the Court were not to allow discovery.  *See Axiom*, 564 F.3d at 1381.  InfoReliance is entitled to limited discovery and supplementation of the administrative record so that the merits of its claim may be tested on a complete record.  *See Murakami*, 46 Fed. Cl. at 735 n.4; *Tauri Grp.*, 99 Fed. Cl. at 480–81.

### III.  CONCLUSION

For the reasons stated above, plaintiff's motion for discovery --- as modified, *see* Pl.'s Reply, Ex. A, is accordingly **GRANTED**.  Counsel for the parties shall confer and submit a Joint Status Report on or by **Tuesday, October 28, 2014**, proposing a schedule for further proceedings.

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Judge

---

a claim of deliberative process privilege.  *See Tummino v. Von Eschenbach*, 427 F. Supp. 2d 212, 234 (E.D.N.Y. 2006) (noting that the deliberative process privilege does not apply where a showing of bad faith has been made (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. at 420)).

[11]  The government objects that the Perry Declaration contains inadmissible hearsay which the Court may not consider.  *See* Def.'s Opp'n at 13–17 (discussing Fed. R. Evid. 801–803).  But the statements of Messrs. Franco and Wright are not being considered "to prove the truth of the matter[s] asserted," Fed. R. Evid. 801(c)(2), but rather to support plaintiff's effort to obtain their testimony in admissible form.  Moreover, the statements of Mr. Wright and Ms. Stefaniga are not hearsay, when offered against the government, as each "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D).